Marica DURKOT

v.

TESCO EQUIPMENT, LLC.

Civil Action No. 08–4538.

United States District Court,
E.D. Pennsylvania.

Sept. 9, 2009.

John A. Lord, Saltz, Mongeluzzi, Barrett & Bendesky, Philadelphia, PA, Daniel A. Schwarz, Schwarz & Schwarz, P.C., Philadelphia, PA, for Marica Durkot.

Jeffrey A. Krawitz, Renee Berger, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Tesco Equipment, LLC.

## MEMORANDUM AND ORDER

JACOB P. HART, United States Magistrate Judge.

Plaintiff Marcia Durkot filed this action in the Philadelphia Court of Common Pleas on August 22, 2008, seeking damages for injuries she sustained on September 27, 2006, while working as a catering agent for U.S. Air at the Philadelphia International Airport. Plaintiff sustained her injury while using a catering lift truck manufactured by Defendant TESCO. The action was removed to this Court based on diversity jurisdiction. Defense Counsel for TESCO submitted a letter to the Court on July 15, 2009, asking for guidance as to which Restatement will be applied in this case and Plaintiff's counsel issued a response. After a telephone conference regarding this issue, Defendant has now filed a Memorandum of Law in Support of the Application of Restatement (Third) of Torts: Products Liability §§ 1 and 2, to which Plaintiff has filed opposition. As explained below, Defendant's Application will be denied.

I. *Factual Background*

Plaintiff was employed by U.S. Air for 18 years and worked as a catering agent for over seven years, including the 2 3/4 years she had been working at the Philadelphia International airport. The TESCO catering lift truck Plaintiff was operating when she was injured was delivered to U.S. Air's PHL ground support equipment department in approximately mid-August 2006. It was identified by U.S. Air as vehicle FL–211. The vehicle was built with "a scissors-lift mechanism which is mounted to a rear chassis of a truck, and used to raise the van body, or catering lift box to the height desired by the operator. The lift-boxes on catering trucks, including Truck FL–211, are raised and lowered from inside the lift-box, by one of the catering agents' use of the control buttons located in the 'front' or plane-side of the catering lift box, near the front door of the lift-box, from which a built in ramp extends to provide a walk-way into the side door of the aircraft. The catering agent operating the lift mechanism is required to continuously hold down two buttons to raise the catering lift box until it reaches its desired height. The agent is likewise required to continuously depress the single 'down' button in order to lower the lift-box."

Defendant notes that according to John Yutzy, U.S. Air's Regional Safety Manager at the time of the incident, U.S. Air required the rear doors of the catering truck to remain closed whenever the lift box was being raised or lowered to provide fall protection for the employees and equipment inside the box and failure to do so was grounds for discipline. According to Defendant, on the day of the incident, Plaintiff opened the rear door of the catering lift truck while the box was still descending and started to exit before the box reached its full rest position. According to Plaintiff, this was the first day using a TESCO lift for both her and her co-worker. Her co-worker was the one operating the controls of the lift and she believed the truck had been completely lowered before she opened the door and began to exit. The parties agree that she stepped down on the lower frame of the scissors lift assembly, believing she was stepping onto one of the steps built into the truck's bumper. As the lift continued its descent, her left foot became entrapped between the upper and lower frame of the scissors lift assembly, causing her foot to be crushed as the lift lowered. Plaintiff required amputation of the great toe and second toes of her left foot.

*Plaintiff's Product Liability Claim:*

Defendant anticipates that Plaintiff's strict liability claim will allege that the

catering truck was defectively designed because it does not protect a user from inadvertently getting caught in the "pinch point" created by the gap between the upper and lower frame of the scissor lift mechanism, any time the lift-box is raised above its full rest position. TESCO denies that the truck was defectively designed. TESCO's operation and maintenance manual warns users that the lift trucks should only be operated by trained personnel. Defendant argues that when the truck was sent to the airport TESCO sent representatives to train U.S. Air's catering personnel in proper use of the vehicle, which would include keeping the rear door closed any time the lift box is raised from the full rest position. TESCO argues that Plaintiff's injuries are a result of her failure to follow TESCO's recommended procedures and U.S. Air's policies, by exiting the vehicle while it was not in full rest position.

## II. *Discussion*

In a diversity case, such as this, a federal district court is required to apply the law of the state in which the claim arose. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that Pennsylvania law is to be applied in this case.

The Pennsylvania Supreme Court adopted Section 402A of the Restatement (Second) of Torts in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Since that time, the Court has interpreted the section, leaving Pennsylvania strict liability law unclear in certain areas. Specifically, there has been some confusion as to the extent that negligence principles, such as reasonableness are to be considered by the jury. *See Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978).

In *Berrier v. Simplicity Manufacturing, Inc.,* 563 F.3d 38 (3d Cir.2009), the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the Third Restatement. In *Berrier,* the plaintiffs sought damages for injuries sustained by a minor when her grandfather was operating a riding lawnmower and backed over her leg while the mower blades were engaged. The District Court had granted summary judgment in favor of the defendant, finding that under Pennsylvania strict products liability law, recovery was not permitted by anyone other than the intended user of the product. After finding that there were no Pennsylvania Supreme Court decisions addressing the specific issue of a manufacturer's liability for injuries sustained by a bystander, the Third Circuit made a prediction as to how the Pennsylvania Supreme Court would decide that issue. The Third Circuit noted that the Pennsylvania Supreme Court had just recently granted a petition for allowance of appeal in *Bugosh v. I.U. North America Inc.,* 596 Pa. 265, 942 A.2d 897 (2008) and had framed the issue as "whether this Court should apply § 2 of the Restatement (Third) of Torts in place of 402A of the Restatement (Second) of Torts." *Berrier,* 563 F.3d at 57. The Third Circuit relied upon Justice Saylor's concurring opinion in *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000 (2003), speculating that there would be enough votes on the court to adopt the Restatement (Third) in *Bugosh.*

However, after hearing extensive oral argument in *Bugosh,* the Pennsylvania Supreme Court declined to adopt the Restatement (Third). Instead, the Court dismissed the appeal as improvidently granted. *Bugosh v. I.U. North America, Inc.,* 971 A.2d 1228, 1229 (Pa.2009).

Defendant urges this Court to apply the Restatement (Third) because it claims that the Third Circuit's prediction in *Berrier* is precedential and binding upon this Court. Plaintiff urges the Court to apply Section 402A of the Restatement

(Second). Plaintiff argues that the Third Circuit's prediction was based upon the specific facts of *Berrier*, i.e. liability to a bystander, which is not at issue in this case. Furthermore, plaintiff argues that since the Pennsylvania Supreme Court declined to adopt the Restatement Third in *Bugosh*, the Third Circuit's prediction did not hold true and is not binding upon this court.

■■■■ The federal court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court in an effort to determine how the state court would decide the precise legal issue before the federal court. *Koppers Co., Inc. v. Aetna Casualty and Surety Co.*, 98 F.3d 1440, 1445 (3d Cir.1996). "[W]here a federal court of appeals in a given case has ascertained and applied what it apprehends to be the pertinent state law, such ascertainment of the local law is binding upon the trial court *at the retrial of the case* unless it is clearly made to appear by subsequent statute, no more than declaratory, or by binding state court decision that the law of the state was other than what the federal appellate court had understood it to be." *Lennig v. New York Life Ins. Co.*, 130 F.2d 580, 581 (3d Cir. 1942) (emphasis added). The Third Cir-

cuit has not made it entirely clear when its predictions are binding upon the district court. *See Carrasquilla v. Mazda Motor Corp.*, 197 F.Supp.2d 169, 173 (M.D.Pa. 2002) ("The Third Circuit has not given very much guidance on the subject, but has suggested that the only law binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court."); *see also Hollingsworth v. State Farm Fire & Cas. Co.*, 2005 WL 563414, *6 (E.D.Pa. March 9, 2005) (stating that the court "need not consider the debatable question of whether a federal district court is strictly bound by its court of appeals' prediction of state law"). However, it is clear that the district court is no longer bound by a court of appeals' prediction of state law once "later state court decisions indicate that the Court of Appeals' earlier prediction was in error". *Stepanuk v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 92–6095, 1995 WL 553010, at *2 (E.D.Pa. Sept. 19, 1995).

First, this is not a retrial, but is an entirely separate case from that in which the Third Circuit made its prediction of state law. We also agree that this case is factually different from *Berrier* in that it involves a user of the product and not a bystander[1]. Furthermore, we note that

---

1. We agree with Plaintiff that the present case does not involve "the precise legal issue" involved in *Berrier* because it involves a user of the product rather than a bystander. However, it is not on this basis that we find that we are not bound by *Berrier*. As Judge Golden noted in *Richetta v. Stanley Fastening Systems*, *Bugosh*, the case in which the question had been certified and in which the Third Circuit predicted that Pennsylvania would actually adopt the Restatement (Third) also did not involve liability as to a bystander. As Judge Golden notes, the Third Circuit also relied upon Justice Saylor's dissent in *Phillips*, yet another case which did not involve liability as to a bystander. Finally, we also acknowledge that the Third Circuit indicated

that although the question that was certified in *Bugosh* was whether Pennsylvania would adopt section 2 of the Restatement (Third), "we think it highly likely that the Justices who would adopt section 2 would adopt as well ... section 1 rather than trying to parse the applicable provisions of the Third Restatement and thereby supplant some of the Second Restatement and not others." *Berrier*, 563 F.3d at 63; *Richetta*, 661 F.Supp.2d at 505 (quoting *Berrier*). We agree with Judge Golden that the Third Circuit's prediction, while made in a case involving liability as to a bystander, was that Pennsylvania would adopt the Third Restatement in its entirety, replacing the Second Restatement, not simply

by applying the Restatement (Third) in this case, even after the Pennsylvania Supreme Court has declined to change the law as the Third Circuit predicted, we would be applying a different standard than would be applied in state court. As Plaintiff argues, "adoption of defendant's position will lead to citizens of Pennsylvania receiving disparate treatment of their Pennsylvania product liability actions depending on whether they are in state or federal court." (Plaintiff's Response at p. 6). This is completely contrary to the principles of federalism.

Most significantly, we find that the Third Circuit's prediction as to the Pennsylvania Supreme Court's adopting the Restatement Third simply did not hold true. When presented with the opportunity to adopt the Restatement (Third), even after granting the appeal on that precise issue and hearing extensive oral argument, the Court did not take the opportunity to do so. We acknowledge that the Court also did not specifically reaffirm the existing law. However, by failing to take action, contrary to the Third Circuit's prediction, Section 402A of the Restatement (Second) remains the law in Pennsylvania. This issue has very recently been considered by Judge Golden in *Richetta v. Stanley Fastening Systems*, 661 F.Supp.2d 500 (E.D.Pa.2009). Contrary to Judge Golden's findings in *Richetta*, we find that *Berrier's* prediction that a majority of the Justices of the Pennsylvania Supreme Court would adopt the Third Restatement is now invalid. While it is true that the reasoning behind the Pennsylvania Supreme Court's decision in *Bugosh* cannot be known, it is evident that the justices were not in agreement to adopt the Restatement Third in that case.

The *Bugosh* appeal was originally granted for the specific purpose of deciding if

Pennsylvania would adopt the Restatement (Third) and get rid of the Restatement (Second), along with *Azzarello* and its progeny. For this appeal to be dismissed as improvidently granted cannot be looked at as the fundamental equivalent of a simple *allocatur* denied. By dismissing the appeal in *Bugosh* the Pennsylvania Supreme Court obviously decided not to throw out the Restatement (Second) and *Azzarello*. Justice Saylor's lengthy dissent makes this obvious. The Court's dismissal of the appeal as improvidently granted did not include any reasoning as to why the Pennsylvania Supreme Court did not either adopt the Restatement (Third) or specifically reaffirm the existing Pennsylvania law. However, the law was not changed, as the Third Circuit predicted it would be. In his dissent, Justice Saylor hints at possible explanations, and also possible alternatives other than the adoption of the Restatement (Third). Justice Saylor's problems are not with Section 402A, but rather with the way the section has been interpreted, specifically in *Azzarello*. See *Bugosh*, 971 A.2d at 1233 (Saylor, J., dissent) ("[T]he core problem in the application of prevailing Pennsylvania law lies in the insistence on maintaining a doctrinal assertion that there is no negligence in strict liability, when functionally, the law of 'strict' products liability is infused with negligence concepts."). Some of the possible reasons for the court's failure to adopt the Restatement Third in *Bugosh* may have been that they simply did not have enough votes or that they did not feel that it was the appropriate case. However, especially given the possible alternatives discussed by Justice Saylor, including overruling *Azzarello* without adopting the Restatement (Third), it is not at all clear that the Pennsylvania Supreme Court will

as to bystander liability. See *Richetta*, 661 F.Supp.2d at 505.

adopt the Restatement Third even at some point in the future, especially in its entirety as predicted by the Third Circuit. *See Bugosh*, 971 A.2d at 1241 (Saylor, J., dissent) ("To the degree a majority of the Court is not comfortable adopting the whole of Section 2 in this case, there are other alternatives to leaving *Azzarello* in place while the Court continues to search for the perfect vehicle in which to devise a replacement scheme").

Moreover, it is clear from the opinion in *Berrier* that our Court of Appeals fully expected that Pennsylvania's elimination of the Restatement Second and its replacement with the Restatement Third would occur in the *Bugosh* decision. The Third Circuit considered the fact that the Pennsylvania Supreme Court had certified the question in *Bugosh* as part of its basis for its prediction in *Berrier*. Unfortunately, the prediction did not occur. After *Bugosh*, the Restatement (Second) remains the law in Pennsylvania.

Finally, Judge Golden relies upon the case of *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996), finding that the Pennsylvania Supreme Court's dismissal of the appeal in *Bugosh* as improvidently granted had no effect on *Berrier* because the effect of an appeal being dismissed as improvidently granted is the same as if the Court had denied *allocatur*. *See Richetta*, 661 F.Supp.2d at 507. We disagree, especially as it pertains to this case. First, the Pennsylvania Supreme Court's discussion in *Commonwealth v. Tilghman*, of the effect of an order dismissing an appeal as improvidently granted is entirely dicta. The issue in *Tilghman* was only the precedential value, *vel non* of *per curiam* affirmances or reversals. The case did not involve any order dismissing an appeal as improvidently granted. In addition, while it is true that an appeal being dismissed as improvident-

ly granted does not have any impact on that particular case, we find the Pennsylvania Supreme Court's dismissal in the instant case completely contrary to the Third Circuit's prediction in *Berrier*.

The fact that the Third Circuit's prediction did not hold true is in no way a criticism of the Third Circuit or its well reasoned decision in *Berrier*. Despite its expertise and careful examination of the state law, this is not the first time one of its predictions as to state law did not hold true. Judge Sloviter recognized in a law review article that "[d]espite [the Third Circuit's] best efforts to predict the future thinking of the state supreme court's within [their] jurisdiction on the basis of all available data, [they] have guessed wrong on questions of the breadth of arbitration clauses in automobile insurance policies (we predicted they would not extend to disputes over the entitlement to coverage, but they do), the availability of loss of consortium damages for unmarried cohabitants (we predicted they would be available, but they are not), the 'unreasonably dangerous' standard in products liability cases (we predicted the Restatement would not apply, but it does), and the applicability of the 'discovery rule' to wrongful death and survival actions (we predicted it would toll the statute of limitations, but it does not). And this list is by no means exhaustive." 78 Va. L.Rev. 1671, 1679–80 (1992), *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, Dolores K. Sloviter. The Pennsylvania Supreme Court's adoption of the Restatement (Third) is simply another issue that at this point should be included in this list.

In light of the fact that the Pennsylvania Supreme Court failed to adopt the Restatement (Third) when presented with the opportunity to do so in *Bugosh* as was predicted by the Third Circuit, we will

apply Section 402A of the Restatement (Second), as it remains the law in Pennsylvania. The Defendant's motion will therefore be denied.

### ORDER

AND. NOW, this 9th day of September, 2009, upon consideration of Defendant's Motion for the Application of the Restatement (Third) (Document # 23), Plaintiff's opposition thereto, and Defendant;'s Response, IT IS HEREBY ORDERED as that Defendant's Motion is DENIED and Section 402A of the Restatement (Second) will be applied in this case.